These two cases present (though neither majority decision ultimately turns on) the question of whether a person other than a biological or adoptive mother or father may be a “parent” under New York law. In Debra H. v Janice R. (14 NY3d 576 [2010] [decided today]), a visitation case, a majority of the Court reaffirms the holding in Matter of Alison D. v Virginia M. (77 NY2d 651 [1991]) that New York parenthood requires a biological or adoptive relationship, though the majority also holds—correctly in my view—that we should recognize Debra H.’s parental status under the law of Vermont. In H.M. v E.T., a child support case, the majority holds—again correctly in my view—that Family Court has jurisdiction of the case, and does not reach the Alison D. question, while the dissent suggests that Alison D. requires dismissal.
Though I concur with the result in both cases, and join the H.M. v E.T. majority opinion in full, I would depart from Alison D., both for visitation and child support purposes. I grant that there is much to be said for reaffirming Alison D., but I conclude that there is even more to be said against it.
I begin by expressing wholehearted agreement with much of what the Debra H. majority opinion, and Judge Graffeo’s concurring opinion, say. It is indeed highly desirable to have “a bright-line rule that promotes certainty in the wake of domestic breakups,” and to avoid litigation “over parentage as a prelude to further potential combat over custody and visitation” (Debra H., 14 NY3d at 593, 594 [majority op]). There are few areas of the law where certainty is more important than in the rules governing who a child’s parents are. For that reason, I join the Debra H. majority in rejecting the approach taken by the Alison D. dissent, which favored a multi-factor test for parenthood “that protects all relevant interests” (77 NY2d at 662), and by the Wisconsin Supreme Court’s decision in In re Custody of H.S.H.-K. (193 Wis 2d 649, 658-659, 533 NW2d 419, 421 [1995]), which permitted a party to establish a “parent-like relationship” by proving four amorphous elements, including such things as “significant responsibility for the child’s care, education and development” and “a bonded, dependent relationship” with the child. The Debra H. majority is quite right to see in these vague formulas a *529 recipe for endless litigation, which would mean endless misery for children and adults alike.
These reasons lead the Debra H. majority and the H.M. v E.T. dissent to follow Alison D. in concluding that women in the position of Debra H. (putting aside her civil union with Janice R.) and E.T. are not parents of their former lovers’ children. But despite the high value I set on certainty and predictability, I find this result unacceptable. I would therefore adopt a different “bright-line rule”—one that includes these women and others similarly situated in the definition of “parent.”
The position of Debra H. and E.T. is an increasingly common one. Each lived with her same-sex romantic partner. In each case, while the couple was living together, the partner was artificially inseminated with sperm from an unknown donor (artificial donor insemination, or ADI) and gave birth. Both women in each case expected, and led the other to expect, that both of them would be the child’s parents. Yet the Debra H. majority holds that Debra H. would never have become a parent absent the civil union, while the H.M. v E.T. dissent implies that E.T. never became a parent at all. This approach not only disappoints the expectations of the adults involved: much worse, it leaves each child with only one parent, rendering the child, in effect, illegitimate.
To put a large and growing number of our state’s children in that status seems wrong to me. Each of these couples made a commitment to bring a child into a two-parent family, and it is unfair to the children to let the commitment go unenforced. Nor can it be said that adoption by the nonbiological parent—an option available under Matter of Jacob (86 NY2d 651 [1995])—is an adequate recourse, for adoption is possible only by the voluntary act of the adopting parent, with the consent of the biological one. To apply the rule of Alison D. to children situated as are the children in these cases is to permit either member of the couple to make the child illegitimate by her whim—as the facts of these two cases illustrate.
I have said that the interest in certainty is extremely strong in this area; but society’s interest in assuring, to the extent possible, that each child begins life with two parents is not less so. That policy underlies the common-law presumption of legitimacy, “one of the strongest and most persuasive known to the law” (Matter of Findlay, 253 NY 1, 7 [1930, Cardozo, Ch. J.]; see also Michael H. v Gerald D., 491 US 110, 125 [1989] [the *530 strength of the presumption derives from “an aversion to declaring children illegitimate . . . thereby depriving them of rights of inheritance and succession . . . and likely making them wards of the state”]). The policy has been adopted as a matter of statute in particular circumstances (Domestic Relations Law §§ 24, 73) and, in one persuasively reasoned Appellate Division case, has been adapted as a matter of common law to protect children born by ADI (Laura WW. v Peter WW., 51 AD3d 211 [3d Dept 2008]). I would apply the common-law presumption to the facts of these cases, and would hold that where a child is conceived through ADI by one member of a same-sex couple living together, with the knowledge and consent of the other, the child is as a matter of law—at least in the absence of extraordinary circumstances—the child of both.
The rule I propose is clearly defined in at least one respect: It would apply only to same-sex couples—indeed, only to lesbian couples, because I would leave for another day the question of what rules govern male couples, for whom ADI is not possible. This limitation may give some pause, for it seems intuitively that all people, male and female, gay and straight, should be treated the same way. Yet it is an inescapable fact that gay and straight couples face different situations, both as a matter of law and as a matter of biology. By the choice of our Legislature, a choice we have held constitutionally permissible (Hernandez v Robles, 7 NY3d 338 [2006]), same-sex couples in New York have neither marriage nor domestic civil unions available to them. And, pending even more astounding technological developments than we have yet witnessed, it is not possible for both members of a same-sex couple to become biological parents of the same child. These differences seem to me to warrant different treatment. Indeed, different treatment already exists, for both a statute (Domestic Relations Law § 73) and the common law (Laura WW., 51 AD3d at 217) give a measure of protection to the children of married opposite-sex couples who are conceived by ADI. The rule I propose would give the children of lesbian couples similar, though not identical, protection.
In one respect, the rule I have suggested would come closer to treating gay and straight couples alike than the more flexible rules advocated or adopted in many writings, including the Alison D. dissent, the Wisconsin decision in In re Custody of H.S.H.-K, and Judge Ciparick’s concurrence today in Debra H. (14 NY3d at 606-607). Under these approaches, the same-sex partners of biological parents would *531 have an opportunity to become quasi-parents—“de facto parents,” parents-by-estoppel, or persons “in a parent-like relationship.” As to women in the situation of Debra H. and E.T., I would drop all the hyphens and quotation marks, and call them simply parents.
For these reasons, I would hold that Debra H. is M.R.’s parent, and that E.T. is the parent of H.M.’s biological son. Therefore, in Debra H. v Janice R., I would not find it necessary to reach the effect of the Vermont civil union (although, since the majority does reach it, I join in its resolution of that question); and I would hold that Family Court has jurisdiction in H.M. v E.T. not only on the narrow ground adopted by the majority, but also on the ground that E.T. is the child’s parent and therefore “chargeable with the support of such child” within the meaning of Family Court Act § 413 (1) (a).